IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.   13-cv-02595-WYD

DENNIS J. DWIER,

　　　Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

　　　Defendant.

---

## ORDER

---

THIS MATTER is before the Court on review of the Commissioner's decision that denied Plaintiff's application for disability insurance benefits ["DIB"] and supplemental security income ["SSI"] under Titles II and XVI of the Social Security Act ["the Act"], 42 U.S.C. §§ 401-433.  For the reasons stated below, this case is reversed and remanded to the Commissioner for further fact finding.

I.　　BACKGROUND

Plaintiff filed a claim for DIB and SSI on January 14, 2008, alleging a disability onset date of August 31, 2000.  (Administrative Record ["AR"] 73.)  Plaintiff, born on November 20, 1957, was 42 years old on his alleged disability onset date.  (*Id.* 27.)  The initial hearing before the Administrative Law Judge ["ALJ"] resulted in an unfavorable decision dated February 11, 2010.  (*Id.* 73-83.)  Plaintiff appealed to the Appeals Council which remanded the case to the ALJ.  (*Id.* 88-90.)

The remand hearing before the ALJ resulted in an unfavorable decision dated December 1, 2011 (AR 14-29), at which time the ALJ found that Plaintiff had "changed age category to closely approaching advanced age." (*Id.* 27.)  In the sequential evaluation process required by law, the ALJ found at step one that Plaintiff met the insured status requirements of the Act through December 31, 2005. (*Id.* 19.)  He also found that Plaintiff had not engaged in substantial gainful activity since August 31, 2000, the alleged onset date. (*Id.*) At steps two and three, the ALJ found that Plaintiff had several severe impairments, including left knee osteoarthritis, degenerative disc disease, and depressive disorder, not otherwise specified, but that such impairments did not meet or medically equal a per se disabling impairment. (*Id.* 20.)

The ALJ then assessed Plaintiff's residual functional capacity ["RFC"], finding that Plaintiff, who has at least a high school education, could "perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)" except that he "is able to engage in occasional bending, squatting or kneeling; is unable to climb ladders or scaffolds; is unable to operate foot or leg controls; and is unable to do complex tasks, meaning the work must have a Specific Vocational Preparation (SVP) of less than or equal to 3 and General Education Development of 1 to 3."[1]  (AR 21, 27.)

---

[1] SVP is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job situation.  U.S. Dep't of Labor, Employment & Training Admin., *Dictionary of Occupational Titles*, vol. II, app. C, pt. III (4th ed. 1991), available at 1991 WL 688702.  A SVP of 2 means that a person could learn how to do this position with a short demonstration, up to and including one month.  *Id.*  The General Education Development ["GED"] "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance", and is composed of three division:  reasoning development, mathematical development, and language development.  *Id.*

With the assistance of a vocational expert, the ALJ found with this RFC that Plaintiff could still perform his past relevant work as a pizza deliverer or, alternatively, perform other representative occupations that existed in significant numbers in the national economy.  (AR 27-28.)  This included the jobs of small product assembler, cashier 2, and counter attendant.  (*Id.* 28.)  The ALJ thus concluded that Plaintiff had failed to establish that he was under a disability, as defined by the Act, between the alleged onset of his disability and the date of the ALJ's decision.  (*Id.* 29.)

The Appeals Council denied Plaintiff's request for review (AR 1), making the ALJ's decision the final decision of the Commissioner.  Plaintiff timely sought review.

Plaintiff argues that the ALJ erred in determining at step four that Plaintiff's past work as a pizza deliverer is past relevant work, as the ALJ previously found that this work did not rise to the level of substantial gainful activity.  Further, he argues that the ALJ did not make a proper credibility finding, and that the ALJ's limitation on skill level and GED levels to account for Plaintiff's severe depression was improper.  Lastly, Plaintiff asserts that the ALJ erred in (1) improperly rejecting Dr. Randall's restriction to account for Plaintiff's frequent bathroom breaks, (2) giving improper reasons for the weight afforded to the opinions of Drs. Randall and Campbell, and (3) failing to follow the two-step process for assessing treating physician Dr. McNabb's opinion.

II.    ANALYSIS

A.    Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether

the decision is supported by substantial evidence.  *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992).  Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion.  *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990).  "It requires more than a scintilla of evidence but less than a preponderance of the evidence."  *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  "[I]f the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence."  *Thompson v. Sullivan*,  987 F.2d 1482, 1487 (10th Cir. 1993).  However, the court "must 'exercise common sense' in reviewing an ALJ's decision and must not 'insist on technical perfection.'"  *Jones v. Colvin*, 514 F. App'x 813, 823 (10th Cir. 2013) (quotation omitted).

The ALJ's decision must be evaluated "based solely on the reasons given stated in the decision."  *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).  Thus, I will not consider post-hoc arguments of the Commissioner.  *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008).

B.     The Merits of Plaintiff's Arguments

1.     Plaintiff's Mental Impairments and the Mental RFC

I first address the argument that the ALJ did not follow the appropriate test for assessing treating psychiatrist Dr. McNabb's opinion, as I find it impacts the RFC. Dr. McNabb completed a Residual Functional Capacity Evaluation (Mental), finding that

Plaintiff had slight to extreme limitations in connection with his mental capacity to work. Specifically, Dr. McNabb opined in April 2009 that Plaintiff would have mostly marked limitations in sustained concentration and persistence and would have moderate limitations in areas of social interaction and adaptation.  (AR 553-54).[2]  He stated his opinion was based upon his clinical exam findings, and that while it was unknown how long Plaintiff's mental impairments have been at those severity levels, it had been "several years." (*Id.* 554.)  In November 2009, Dr. McNabb issued a statement indicating Plaintiff's impairments remained at the same severity level.  (*Id.* 598)  In April 2011, he opined that Plaintiff's level of functioning ranged from slight to marked, and that the impairments had been at these severity levels since 2001.  (*Id.* 601-02.)

The ALJ gave Dr. McNabb's opinions "little weight."  (AR 25.)  In so doing, he failed to complete the two-step analysis required for considering whether a treating provider's opinions are entitled to controlling weight.  I find that this is reversible error that requires a remand of the case.  The initial determination the ALJ must make is whether the treating physician's medical opinion "is conclusive, i.e., is to be accorded 'controlling weight,' on the matter to which it relates." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).  "Such an opinion must be given controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and

---

[2] Among other things, he opined that Plaintiff would have marked limitations in (1) the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number or length of rest periods; (2) the ability to sustain an ordinary routine without special supervision, and (3) the ability to work in coordination with or in proximity to others without being distracted by them.  (*Id.* 553.)  Dr. McNabb also found that Plaintiff would have extreme limitations in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances.  (*Id.*)

is not inconsistent with other substantial evidence in the record." *Id.* The ALJ did not

discuss or consider whether Dr. McNabb's opinion was entitled to controlling weight.

Even if the opinion is not entitled to controlling weight, it was still entitled to deference;

"at the second step in the analysis, the ALJ must make clear how much weight the

opinion is being given. . . and give good reasons, tied to the factors specified in the cited

regulations for this particular purpose, for the weight assigned." *Id.*

Even if I assume that the ALJ implicitly decided that Dr. McNabb's opinion was

not entitled to controlling weight, there is no indication that he gave deference to his

opinion or that he weighed the required factors in deciding what level of deference

Dr. McNabb's opinion should have been given.  *See Watkins v. Barnhart*, 350 F.3d

1297, 1300 (10th Cir. 2003).  This alone was reversible error.  *Id.* at 1300-01.

I also find that several of the ALJ's reasons for rejecting Dr. McNabb's opinions

are not valid.  The first reason relied on by the ALJ is "that an individual with this level of

limitations [as opined to by Dr. McNabb] would normally be expected to be

institutionalized"; "[y]et, no source has suggested that the claimant's condition is so

severe as to require such drastic measure."  (AR 25.)  This is a lay opinion that is

unsupported by any evidence.  The Tenth Circuit is clear that "'[i]n choosing to reject the

treating physician's assessment, an ALJ may not make speculative inferences from

medical reports and may reject a treating physician's opinion outright only on the basis

of contradictory medical evidence and *not due to his or her own credibility judgments,*

*speculation, or lay opinion.*'"  *Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004)

(emphasis in original) (quotation omitted).

-6-

The ALJ also found that the limitations in the "check form" opinions are not supported by Dr. McNabb's treatment notes or the evidence as a whole.  (AR 25.)[3]  As to the treatment notes, the Commissioner is correct that Dr. McNabb consistently observed that Plaintiff demonstrated intact memory, well-organized thought processes, fair to good insight and judgment, and fair to good hygiene.  Dr. McNabb also noted, however, that Plaintiff "has thoughts of harming himself almost daily but is not completely preoccupied with suicide" (*id.* 670), "[h]is depression continues to be about a 7 on a scale of 1/10" (*id.*), "he has suicidal ideation every day and has for years" (*id.* 672), and "no medication has worked for his depression" (*id.* 584).  The ALJ did not discuss and/or minimized these findings.  (*Id.* 24—noting, in contrast to the records, that "the claimant has *occasionally* reported *fleeting* suicidal ideation; also noting that "[n]otes from Spanish Peaks Mental Health *have similarly been fairly normal*") (emphasis added).  An ALJ may not "'pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence.'" *Carpenter*, 537 F.3d at 1265 (quotation omitted).  Moreover, while inconsistency with other evidence may be a reason to deny controlling weight to Dr. McNabb's opinion, 20 C.F.R. § 404.1527(c)(2), it is not a reason to completely reject his opinion.  *Langley*, 373 F.3d at 1120.[4]

---

[3] While the Commissioner asserts that "check-box" forms are entitled to less weight, that is not necessarily accurate as to the opinion of a treating physician.  *See Anderson v. Astrue*, 319 F. App'x 712, 723 (10th Cir. 2009).

[4] Similarly, the fact that the 2009 and 2011 forms completed by Dr. McNabb did not assess the same level of limitation and differed in terms of how long Plaintiff's impairments had been at the levels assessed does not allow the ALJ to simply reject the reports.  The regulation in effect when the ALJ issued his decision required an ALJ to "seek additional evidence or clarification from your medical source when

Plaintiff also argues that the ALJ's RFC limitation on skill level and GED levels did not adequately account for his severe depression, and that the ALJ failed to comply with the Appeals Council Remand Order.  Again, I agree and find that this is another basis for remand.  The Appeals Council stated:

> The hearing decision indicates that the claimant has the severe impairment of depressive disorder, not otherwise specified (Decision, page 3) and that the claimant had moderate limitations in social functioning, and concentration, persistence or pace (Decision, page 4). Despite these findings, the claimant's residual functional capacity only included the mental limitation of unable to do complex tasks, meaning work must have a Specific Vocational Preparation of less than or equal to 3 and General Education Development of 1 to 3 (Decision, page 5). Additional consideration of the claimant's mental status and the limitations in the claimant's residual functional capacity is warranted.

(AR 89.)  The Appeals Council also stated that the ALJ was to give further consideration to Plaintiff's RFC "with specific references to evidence of record in support of the assessed limitations."  (*Id.* 90.)  The ALJ is required to take any action that is ordered by the Appeals Council.  20 C.F.R. §404.977(b).

Upon remand, the ALJ once again found that Plaintiff's depression was severe and that he had moderate limitations in concentration, persistence or pace (AR 20). Despite this, he  assessed the exact same RFC (*id.*), and failed to discuss, as required by the Appeals Council, why the RFC only included mental limitations related to SVP and GED.  Moreover, he did not appear to conduct additional consideration of Plaintiff's mental status, consider whether additional limitations in the RFC were warranted, or explain how Plaintiff's mental health limitations were properly accounted for, as ordered

---

the report from your medical source contains a conflict or ambiguity that must be resolved."  20 C.F.R. § 1512(e)(1) (2008).

by the Appeals Council.[5]  Accordingly, I agree with Plaintiff that the ALJ violated the Remand Order of the Appeals Council.

Moreover, the record is devoid of any evidence to support the ALJ's conclusion that a reduction in skill and GED levels properly accounted for Plaintiff's specific mental health limitations and the ALJ failed to cite any evidence, let alone substantial evidence, in support of same.  (AR 24-25).[6]  The ALJ's RFC assessment thus appears to have improperly been based upon his own lay assessment of the medical evidence, which was error.  *See Winfrey v. Chater*, 92 F.3d 1017, 1021-22 (10th Cir. 1996) (an ALJ is not entitled to reject a doctor's opinions without adequate justification or to substitute his own medical judgment for that of mental health professionals).  This error "is especially profound in a case involving a mental disability."  *Morales v. Apfel*, 225 F.3d 310, 319 (3rd Cir. 2000).  The error impacted not only the RFC but the hypothetical question given to the vocational expert.

Indeed, the Tenth Circuit has clearly stated that there is a distinction between skill level and mental functions.  *Jaramillo v. Colvin*, 576 F. App'x 870, 876 (10th Cir. 2014) (citing *Chapo v. Astrue*, 682 F.3d 1285, 1290 n. 3 (2012)).  While in some circumstances mental limitations can be accommodated by a reduction in skill level, such as to unskilled work, this only occurs where the limitations found by the ALJ are

---

[5] The ALJ stated that there is no evidence that Plaintiff's "mental condition has required anything more than conservative treatment" or that it "presents limitations unaccounted for by the assessed" RFC (AR 24).  Further, he stated "[o]bjective medical evidence in the record" regarding Plaintiff's mental functioning does not support an assessment of further limitations" beyond the RFC.  (*Id.* 25.)  This does not explain, however, how he came up with the RFC or what evidence supported it.

[6] I note that Dr. McNabb is the only medical professional to have rendered an opinion as to mental RFC.

those consistent with such work.  *Id. see also Wayland v. Chater*, Nos. 95-7029 and 95-

7059, 1996 WL 50459, at * 2 (10th Cir. Feb. 7, 1996).  There is no evidence that the

moderate mental impairments found by the ALJ are captured by the limitation in SVP

and GED levels articulated by the ALJ.  Thus, the ALJ was required to state what

specific mental impairments Plaintiff had "with sufficient precision in a dispositive

hypothetical to a VE and in an RFC finding."  *Jaramillo*, 576 F. App'x at 876 (quotation

omitted); *see also Crowder v. Colvin*, 561 F. App'x 740 (10th Cir. 2014).   The ALJ failed

to do this.  His errors in connection with the mental RFC require a remand.

## 2.    Plaintiff's Physical Impairments and Physical RFC

Plaintiff also argues that the ALJ gave improper reasons for the weight afforded

to the opinions of examining physicians Drs. Randall and Campbell, who opined as to

Plaintiff's physical impairments.  Specifically, Dr. Randall diagnosed left knee pain, low

back pain, spastic colon, and depression/anxiety.  (AR 480).  He opined Plaintiff could

stand or walk four hours per workday, would require frequent bathroom breaks, would

need to be in close proximity to a bathroom, could lift or carry 50 pounds frequently and

25 pounds occasionally, and is limited on crouching.  (*Id.*)  The ALJ afforded

Dr. Randall's opinion "limited weight because the evidence as a whole shows the

claimant is less limited in some respects than Dr. Randall assessed." (*Id.* 26.)  It is

unclear from this as to what weight was actually given to the opinion of Dr. Randall.

Plaintiff also underwent an examination with Dr. Campbell (AR 590-96), who

diagnosed chronic low back pain, bilateral osteoarthritis of the knees, and chronic

severe depression.  (*Id.* 592).  She opined that Plaintiff could stand/walk thirty minutes

at a time and four hours per day, perform squatting and kneeling less than one hour a day, perform bending and stooping less than three hours a day, could lift 20 pounds less than three hours a day, could climb stairs less than one hour per day, and should avoid climbing ladders or scaffolds. (*Id.*)  The ALJ afforded Dr. Campbell's opinion "limited weight" on the basis that her opinion was not supported by her examination findings. (*Id.* 27).  Again, it is unclear as to what weight was actually given to the opinion of Dr. Campbell.

I find that the ALJ improperly substituted his lay opinion for that of the examining physicians, which is error, and failed to properly weigh their opinions.  This also requires a remand.  The ALJ stated that the opinions of Dr. Randall and Dr. Campbell are inconsistent with the evidence of record and their own examination findings. (AR 26-27).  He then pointed to findings such as normal gait and normal muscle tone and development as a means to reduce the weight afforded to these examining physicians (*id.*).  Similarly, the Commissioner relies on some of the normal examination findings made by Drs. Campbell and Randall and argues that the inconsistency between the physicians' examination findings and their opinions was a reasonable ground to give limited weight to such opinions.  The ALJ and Commissioner ignore, however, findings of the doctors that provided support for their opinions. (*See, e.g.,* AR at 478-79— Dr. Randall's findings regarding range of motion and tenderness in left knee "to patellar grind", "tenderness along the medial lateral joint line to palpation" and "significant crepitus" in left knee; 592—Dr. Campbell's findings regarding Plaintiff's lumbosacral spine and lower extremities.)

The ALJ cannot selectively apply the evidence or impose his own "medical expertise" over that of the physicians.  *See Winfrey,* 92 F.3d at 1022 ("the ALJ clearly overstepped his bounds when he substituted his medical judgment for that of" the physician when he determined that the test results were not adequate to support the physician's diagnosis); *Carpenter*, 537 F.3d at 1265.  This "impermissibly put the ALJ in the position of judging a medical professional on the assessment of medical data." *Thomas v. Barnhart*, 147 F. Appx. 755, 759-60 (10th Cir.2005).  The fact that, for example, the doctors found that Plaintiff walked with a normal gait or was able to complete the examination without pain behaviors, does not mean that the doctors' other findings of impairment were insufficient to support their diagnoses and findings.  The ALJ is not more qualified to understand the meaning of the medical data and examination findings than are Drs. Randall and Campbell; indeed, he is not a medical expert.  If the ALJ did not believe these opinions were adequate, he should have recontacted Drs. Randall and Campbell to discern the basis of their opined limitations. *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002).

The Commissioner argues, however, that both Drs. Randall and Campbell indicated that their standing and walking limitations were based upon Plaintiff's reported knee pain and back pain.  (*See* AR 480, 592.)  She asserts that the ALJ reasonably discounted Plaintiff's complaints of debilitating knee and back pain because they were inconsistent with substantial evidence of record.  I disagree.  As noted earlier, the opinions of these doctors was not based only on Plaintiff's complaints of knee and back pain, but on objective findings made upon examination that support the pain diagnoses.

-12-

(*Id.*, 478-80, 592.)  Indeed, Dr. Campbell was explicit about this, stating that Plaintiff "*has findings* consistent with mechanical lumbar dysfunction and bilateral osteoarthritis of the knee. . . ." (*Id.* 592.)

Plaintiff also argues that the ALJ erred in rejecting Dr. Randall's restriction to account for Plaintiff's frequent bathroom breaks.  Since I am remanding this case, I direct the ALJ to consider all the evidence on this issue, as I am not convinced that the ALJ did so.  Dr. Randall diagnosed spastic colon, after noting Plaintiff's statement that he has diarrhea approximately 80% of the time and occasionally has blood in the stools. (*Id.* 477, 480.)  Plaintiff also points out that there were examination notes reflecting problems with his colon, including tenderness, pain and constipation, that supported that Dr. Randall's finding.  (*Id.* 267, 271, 273-74, 279, 286, 399, 403-04, 506, 508.)

### 3.    Credibility Finding

Plaintiff also argues that the ALJ failed to assess his credibility in accordance with applicable law.  The ALJ found "[a]fter careful consideration of the evidence. . . that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent" with the RFC assessed by the ALJ.  (AR 22.)

Turning to my analysis, the regulations require a two-step process for evaluating a claimant's pain symptoms.  The first step is to determine whether plaintiff has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms.  20 C.F.R. § 404.1529(b); SSR 96-7p, 1996 WL 374186, at *2.  If the

first step is satisfied, the second step requires the ALJ to evaluate the intensity and persistence of the symptoms in order to determine how the symptoms limit the capacity for work.  20 C.F.R. § 404.1529(c)(1); SSR 96-7p, 1996 WL 374186, at *2.   The sufficiency of the ALJ's decision must be evaluated based on the reasons stated by the ALJ in the decision.  *Robinson v. Barnhart*, 366 F.3d 1078, 1084-85 (10th Cir.2004).

   In this case, the first step was satisfied because the ALJ found Plaintiff's impairments could reasonably be expected to cause the alleged symptoms.  (AR 22).  However, it does not appear that the ALJ properly assessed the second step, *i.e*, he did not assess the disabling effects of Plaintiff's specific symptoms or state "to which extent he credited what [Plaintiff] said when determining the limiting effects of h[is] symptoms."  *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1165 (10th Cir. 2012); *see also McGoffin*, 288 F.3d at 1254 ("[t]he ALJ did not, however, explain and support with substantial evidence which of her testimony he did not believe and why").  Thus, I find that the determination was not "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.  SSR 96-7p, 1996 WL 374186, at *2.

   While the ALJ discussed the objective medical findings and appeared to use these findings to discount Plaintiff's credibility, "a lack of objective corroboration of the pain's severity cannot justify disregarding those allegations."  *Luna v. Bowen*, 834 F.2d 161, 165 (10th Cir. 1987); *see also Romero v. Astrue*, 242 F. App'x 536, 541 (10th Cir. 2007) (conclusions concerning claimant's pain and limitation "find support in the treatment records and therefore could not be cursorily dismissed for the reason the ALJ

gave: lack of medical evidence").  Moreover, I previously found that the ALJ did not properly weigh the opinions of Drs. Randall and Campbell, both of whom diagnosed pain after objective findings upon examination.  These opinions must be considered on remand in connection with the credibility assessment.

        4.   Step Four Finding

Finally, Plaintiff argues that the ALJ erred at step four in finding his past work as a pizza deliverer is past relevant work.  (*See* AR 27.)  I agree, as the ALJ found at the hearing that Plaintiff's past work as a pizza deliverer did not rise to the level of substantial gainful activity ["SGA"].  (*Id.* 66.)  Work that is not considered to be SGA does not qualify as past relevant work.  *See Jozefowicz v. Heckler*, 811 F.2d 1352, 1356-1358 (10th Cir. 1987).  Accordingly, I find that the ALJ's step four analysis is not supported by substantial evidence.  Moreover, because I found that the ALJ did not properly consider the opinions of Drs. McNabb, Randall and Campbell, and erred in connection with the RFC, the hypothetical question and the findings at step five are not supported by substantial evidence.

III.   CONCLUSION

In conclusion, I find that this case must be reversed and remanded for further fact finding.  The ALJ erred in weighing Dr. McNabb's opinions and in assessing the mental RFC.  The ALJ also erred in weighing the opinions of Drs. Campbell and Randall as to Plaintiff's physical impairments.  Finally, the ALJ erred in the credibility analysis and in finding at step four that Plaintiff could perform his past relevant work as a pizza deliverer.  These errors impacted the hypothetical question and the ALJ's findings at

step five.  In light of the need for further fact finding, outright reversal as requested by

Plaintiff is not appropriate.  *Sorenson v. Bowen*, 888 F.2d 706, 713 (10th Cir. 1989).

Therefore, it is

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner

for further fact finding as directed in this Order pursuant to sentence four in 42 U.S.C.

§ 405(g).

Dated:  March 25, 2015

BY THE COURT:


s/ Wiley Y. Daniel_____
Wiley Y. Daniel
Senior United States District Judge